BARTHOLD SCHLESSINGER & others *vs.* WILLIAM DICKINSON.

Under an agreement to indorse any paper which another person may give for purchases made, to a certain amount each month, no liability arises until the purchases have been made and the notes given or requested to be given, or unless notice of the purchases has been given to the contracting party within a reasonable time; and a delay of nearly four months is unreasonable.

Such an agreement does not cover a claim for labor performed in rolling iron to prepare it to be manufactured in a wire mill, unless a general usage is proved to include such labor under that term; and evidence that in contracts of the kind in controversy, made for supplying a wire mill, such labor, according to the well understood and general usage of the business, is a purchase, does not show a use so general as to justify the assumption that parties guaranteeing the payment of purchases, intended to become liable for charges for such labor.

CONTRACT to recover the price of goods sold and delivered to Henry S. Washburn, under the following written agreement

" Worcester, March 12, 1860. , Messrs. Naylor & Co., Boston, Mass. Gentlemen — We hereby agree, on the condition that you will renew for six months, with interest, so many of the promissory notes of Mr. Henry S. Washburn as you now hold, which he may be unable to pay at maturity, that we will indorse any paper he may give you for purchases made for his mill, from this date, to the extent of one thousand dollars a month each, independent of previous indorsements and guaranties, and until the notes so renewed shall be paid, or until his indebtedness to you without security shall be reduced to the sum of four thousand dollars. William Dickinson, Nathan Washburn." The bill of particulars contained items from November 28th 1860 to February 13th 1861.

At the trial in the superior court, before *Ames*, J., it appeared that at the date of the above agreement, Naylor & Co., the plaintiffs, were creditors of Henry S. Washburn to the amount of about $22,000, of which about $6000 was secured ; that the debts due to the plaintiffs from him were renewed in accordance with the provisions of the agreement and were never paid, and the unsecured indebtedness was never reduced below $10,000. Henry S. Washburn was a wire manufacturer, and the plaintiffs, who were dealers in iron and steel, were in the habit of supplying him with iron and steel rods, which were sometimes delivered as imported by them and sometimes rolled at their rolling mills, the materials therefor sometimes being scrap iron procured and sent to them by him. After the execution of the above agreement and until the fall of 1860, the plaintiffs were accustomed, when the accounts against Washburn for the rods amounted to $2000, to send to him a statement thereof, and he returned to them his notes indorsed by the defendant or Nathan Washburn for the amount. Prior to the date of the first item in the bill of particulars, Nathan Washburn had indorsed eleven notes and the defendant seven. The correctness of the items of the bill of particulars was not disputed. The plaintiff Schlessinger and Henry S. Washburn testified that they were furnished on the faith of the above agreement. The defendant testified that for several months before April 12th 1861 he had made up

his mind to indorse no more paper, and that Henry S. Washburn was wholly insolvent. On that day he wrote to the plaintiffs as follows: " A year ago or more, Mr. Nathan Washburn and myself agreed to indorse for Mr. Henry S. Washburn, for a certain amount, and on certain conditions. As the understanding upon which that paper was based was carried out long since, and the indorsements made, I am desirous of having the paper returned, there being nothing left for us to do but to respond to our several indorsements. Will you please, therefore, inclose it to one of the parties, that it may be destroyed ? "

On the 17th of the same month, the plaintiffs replied as follows: " Your favor of the 12th inst. is duly received, and we should have replied to it ere this but for the temporary absence of our partner, who had charge of the guaranty you refer to. We would beg to say that there is still an open account against Mr. H. S. Washburn on our books, for an amount of about $1800, for goods furnished under this agreement in question, for which we are to receive your indorsement of Mr. H. S. Washburn's note. We will write to Mr. Washburn on the subject, and after receiving the settlement we shall, as you request, return you the document referred to."

On the 18th of the same month, Dickinson wrote again to the plaintiffs, as follows: " Your favor of the 17th inst. is received. I am quite surprised that you consider me under any obligation to you by reason of the agreement between you, Mr. Nathan Washburn and myself, last year in March. I beg to say I do not recognize any such obligation, as far as I am concerned."

Henry S. Washburn was called as a witness by the defendant, and testified substantially as follows: " Between the 23d of November and the 23d of December 1860 I purchased rods of the defendant to the amount of about $1000. The account up to November 23d had been settled. The plaintiffs sent up a statement of the account, and wanted a note as before. I went to Boston in a day or two, and told Schlessinger I would give him Nathan Washburn's indorsement for the account. Schlessinger wanted the defendant's indorsement. I told him that the defendant did not wish to indorse any more paper, and that I would

give him some business paper instead. I therefore gave to Schlessinger two notes, one for about $500, which was paid, and one for about $400, which was never paid. I told Schlessinger, in the course of this conversation, that I wished to dispose of this debt, and also to reduce my individual indebtedness. Schlessinger did not agree to apply these notes to any particular debt, but said that he did not know that they would be paid, and he would place the amount to my credit. Between March and November the charges for rolling iron furnished by the plaintiffs amounted to $500 or $600.

" Cross-examination : Schlessinger, in the above conversation, said that he did not know to which debt to apply the two notes above mentioned, and I assented to what he said, and did not direct him to apply it to the debt in suit. Schlessinger had a perfect right to apply it to which he pleased. I was always willing to give my note for the account. I have been long in the wire business, at South Boston and Quinsigamond, and have dealt with the plaintiffs for many years. I understood that the rolling was done under the guaranty. In contracts of this sort, made for supplying a mill like mine, the passing of the iron through one stage of its manufacture is a purchase, according to the well understood and general usage of the business."

The plaintiff Schlessinger testified that he put the proceeds of the business note to the general credit of Henrv S. Washburn.

Upon these facts, and others which are now immaterial, the judge expressed the opinion that the plaintiffs were entitled to recover. The defendant thereupon submitted to a verdict for $1275.70, which is the whole amount of the plaintiffs' claim with interest; and the case was reported for the determination of this court, with the agreement that if, upon the above facts, the plaintiffs are not entitled to recover, the verdict is to be set aside, and judgment entered for the defendant; and if the plaintiffs are entitled to recover simply for goods sold and delivered, but not for the labor upon the materials furnished by Washburn, then the amount of the verdict is to be reduced by deducting therefrom the sum of $224.52.

*D. Foster & T. L. Nelson,* for the plaintiffs. No demand upon the defendants to indorse the notes of Henry S. Washburn was necessary. By the fair terms of the instrument, the notes in question were to be given to the plaintiffs with the defendant's indorsement, and were not be received by the plaintiffs unindorsed, and then tendered to the defendant for his indorsement. *Knight* v. *New England Worsted Co.* 2 Cush. 271. *Sargent* v. *Adams,* 3 Gray, 72. *Old Colony Railroad* v. *Evans,* 6 Gray, 25. *Cambridge* v. *Lexington,* 17 Pick. 222. *New Haven County Bank* v. *Mitchell,* 15 Conn. 206. *Union Bank* v. *Coster,* 3 Comst. 203. 1 Parsons on Con. 495. 1 Greenl. Ev. § 293. The parties themselves put this construction upon it. And, after the defendant's repudiation of the contract, no tender to him could be necessary. The amount charged for labor is within the meaning of the word " purchase," as used in the agreement, and such is the practical construction given to it by the parties. There was no evidence of payment of the debt now sued for, and the defendant did not desire to go to the jury on this point. The plaintiffs might well apply the proceeds of the business note to the old indebtedness, and the law would make the same application of it. The evidence of usage in the iron business was competent.

*P. C. Bacon & E. B. Stoddard,* for the defendant.

MERRICK, J. This is an action upon a written contract signed by the defendant and Nathan Washburn, by the terms of which they jointly promised that each of them would indorse, to the extent of a thousand dollars a month, such notes as should be given by Henry S. Washburn to the plaintiffs, for purchases made of them by him for his mill. Under such an agreement, no liability on the part of the promisors could arise until Henry S. Washburn should have in fact made the proposed or contemplated purchases of the plaintiffs, and have given, or have been requested to give, them his notes therefor. And as the dealings between these parties might, and in the ordinary course of business would, occur without the knowledge of Dickinson and Nathan Washburn, and as the contract does not in express terms designate the time when, or the manner in which, they shall be notified of the purchases made or of the notes given therefor by

Henry S. Washburn to the plaintiffs, it is necessarily to be implied, in the interpretation of the contract, that such notice is to be given to the guarantors within a reasonable time.　These are essential prerequisites, without proof of which no claim for damages can be legally established against them for any breach or non-performance of their stipulations.　The purchases must be made before there can be any indebtedness, and the giving of the notes necessarily preceded the indorsement of them by the defendant.

It appears from the report that up to the 23d of November, that is, during the eight months next succeeding the date of the contract, the plaintiffs had from time to time made sales to Henry S. Washburn, which, together with certain charges for work and labor performed for him, amounted in the whole to the sum of eighteen thousand dollars ; and that for this amount notes had been given to the plaintiffs by said Henry, which were duly indorsed either by said Dickinson or Nathan Washburn; and no claim is now made against the defendant on account of these transactions.　Between the 23d of November and the 22d day of December next following, the said Henry made various purchases of the plaintiffs to the amount of $1014.72; and they also did, on said 22d of December, and on the 13th of February next following, certain work and labor for him, for which they charged him $216.07.　It is the aggregate of these sums, namely, $1230.79, which, not having been paid by said Henry, the plaintiffs now seek to recover of the defendant.

It does not appear whether for this sum any note or notes have been given by said Henry to the plaintiffs; but it does appear from the correspondence between the parties that the defendant had no knowledge that any purchases had been made subsequently to the 22d of November, that he had not been informed or notified thereof by the plaintiffs, or that they expected or desired him to indorse any note or notes given to them therefor by said Henry, or that they had any claim whatever against him on that account, until the 17th day of April next ensuing, which was nearly four months subsequently to the latest day on which any of said purchases had been made.　This notice

cannot be considered as having been given within a reasonable time. The contract had a direct reference to monthly transactions between the plaintiffs and Henry S. Washburn ; and it would seem to have become the duty of the former, if they intended to rely upon and hold the guarantors, that they should, so soon as they conveniently might after the expiration of the month, either call upon the guarantors to indorse the notes given for the purchases, or else notify them of the indebtedness which had thereby been created. At any rate, a delay to give the notice for a period of nearly four months was unreasonable under the circumstances of this case, and therefore the plaintiffs cannot after its occurrence charge the defendant with any default in the performance of his promise.

The agreement of the defendant to indorse the notes of Henry S. Washburn cannot be construed into a guaranty of the payment of any indebtedness which might arise from the performance of labor or services in his behalf. Although Washburn testified that he considered such labor the same as a purchase, such is not the proper or common signification of that word ; nor does it appear that it had acquired such meaning by a use so general as to justify the assumption that the parties intended or expected that charges for labor performed were to constitute any part of the consideration of the notes which the defendant and Nathan Washburn agreed to indorse for purchases made.

In this view it becomes apparent, upon examination of the accounts, that even if this contract were to be considered an absolute guaranty, Dickinson and Nathan Washburn have in fact indorsed all the notes in respect to which the plaintiffs could have any just or legal claim upon them. The notes given by Henry S. Washburn and indorsed either by Nathan Washburn or by the defendant before the 23d of November included charges for labor to the amount of $500 or $600. Deducting this amount, and also the amount of the note for $500 which the plaintiffs received of said Henry on account of the indebtedness, for which either the defendant or Nathan Washburn was to become responsible, on the giving of the notes according to the terms of the contract, it will appear that they did

5 *

indorse notes to the full extent of their agreement. The whole amount of purchases made, irrespective of the labor performed, did not exceed $18,500; and, deducting the note above men tioned, the balance is $18,000; and for that amount the plaintiffs received and accepted to their own satisfaction the notes of Henry S. Washburn, indorsed by one or the other of the guarantors.

It is only necessary to add, that, although Henry S. Washburn testified upon his cross-examination that the plaintiffs were at liberty and had a right to apply the proceeds of said $500 note transferred by him to them just as they pleased, it is apparent from a consideration of the whole testimony that it was in fact transferred to and received by them on account of the particular indebtedness which the defendant agreed to guarantee; and he has therefore a right, as a surety interested in the transaction, to insist that it should not be otherwise appropriated.

For these reasons, in conformity to the agreement of the parties, the verdict must be set aside and judgment entered for the defendant.